## TRANSCRIBED FROM DIGITAL RECORDING

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EIDO HUSSAM AL-NAHHAS,                    )
on behalf of Plaintiff and the            )
class members described below,            )
also known as                             )   Case No. 22-cv-00750
Mohammad Al-Nahhas,                       )
                                          )   Chicago, Illinois
                      Plaintiff,          )   April 12, 2023
-vs-                                      )   9:02 a.m.
                                          )
ROSEBUD LENDING LZO,                      )
doing business as                         )
ZocaLoans; 777 PARTNERS LLC;              )
and TACTICAL MARKETING                    )
PARTNERS, LLC,                            )
                                          )
                      Defendants.         )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GABRIEL A. FUENTES, MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:      MR. DANIEL A. EDELMAN
                        MR. MATTHEW J. GOLDSTEIN
                        Edelman, Combs, Latturner & Goodwin, LLC
                        20 S. Clark Street, Suite 1500
                        Chicago, IL 60603
                        (312)739-4200
                        courtecl@edcombs.com
                        Mgoldstein@edcombs.com

**PLEASE NOTIFY OF INCORRECT SPEAKER IDENTIFICATION**
NOTE:  FAILURE TO STAND NEAR THE MICROPHONE MAKES
PORTIONS UNINTELLIGIBLE AND INAUDIBLE

Transcriber:

KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
Official Court Reporter
United States District Court
219 South Dearborn Street, Suite 1426
Chicago, Illinois  60604
Telephone:  (312) 435-5569
Kathleen_Fennell@ilnd.uscourts.gov

APPEARANCES:   (Continued)

For the Defendant
Rosebud:                    MS. AMY L. STARINIERI GILBERT
                            McGuireWoods LLP
                            77 W. Wacker Drive, Suite 4100
                            Chicago, IL 6061
                            (630) 881-8065
                            agilbert@mcguirewoods.com

For Defendants 777
And Tactical:               MR. PATRICK DAUGHERTY
(Telephonically)            Van Ness Feldman LLP
                            3717 Mt. Diablo Blvd., Suite 200
                            Lafayette, CA 94549
                            (202) 298-1810
                            pod@vnf.com

1    (Proceedings heard in open court:)

2         MR. GOLDSTEIN:  Good morning, your Honor.  Matthew

3    Goldstein for plaintiff.

4         MR. EDELMAN:  And Daniel Edelman for plaintiff.

5         THE COURT:  Very good.

6         Defense?

7         MS. GILBERT:  Good morning, your Honor.  This is Amy

8    Gilbert from McGuireWoods on behalf of Rosebud Lending.

9         THE COURT:  Okay.  Hold on a second.

10        All right.  You said Ms. Goodman, right?

11        MS. GILBERT:  Gilbert.

12        THE COURT:  Okay, close.  Not really.

13        Okay.  Anybody else?

14        Is anybody on the phone today?

15        MR. DAUGHERTY:  Yes, your Honor.  This is Patrick

16   Daugherty from Van Ness Feldman appearing on behalf of 777

17   Partners and Tactical Marketing.

18        THE COURT:  Okay.  Very good.

19        I'm just making some notes.  Hang on.

20        It sounds like all of our parties are represented

21   here today, but is there somebody else who's not here?

22        If there is, Ms. Gilbert --

23        MR. DAUGHERTY:  Your Honor --

24        THE COURT:  Go ahead, Mr. Daugherty.

25        MR. DAUGHERTY:  I apologize, your Honor.

1    Mr. Clair was planning to attend in person and

2  represent -- is my co-counsel who represents the same two

3  parties that I do.

4    THE COURT:  Okay.  But I thought I saw your name as

5  the filer of the motions that came through yesterday,

6  Mr. Daugherty, is that true?

7    MR. DAUGHERTY:  That is correct, your Honor.  Yes.

8    THE COURT:  All right.  And I'm going to trust that

9  you can argue these motions, and we're going to keep moving.

10  Limited time as always as the Court has.

11    So let's go through these.  First of all, there's the

12  motion to compel arbitration first filed by Rosebud and then a

13  subsequent motion was filed yesterday by 777 Partners and

14  Tactical, and along with that there are motions to stay,

15  initial one by Rosebud and then a later one yesterday by 777

16  Partners and Tactical.

17    So just to kind of get a preliminary question out of

18  the way, Mr. Daugherty, are the motions to compel arbitration

19  or I should say motion filed by your client and the motion to

20  stay the discovery in the wake of that compel arbitration

21  motion, Mr. Daugherty, are they basically identical to the one

22  that Rosebud filed first of all?

23    MR. DAUGHERTY:  With respect to the motion to stay,

24  your Honor, I would agree that, yes, they are identical.

25  There are perhaps two discrete issues in the substance of the

1  motion to compel arbitration that we addressed in our short

2  pleading, but we -- it is the same arbitration provision, so

3  they are largely identical.

4  THE COURT: Okay. That's good to know just because

5  from the Court's perspective, I don't know should I put these

6  two motions side by side and figure out what is being said in

7  one of them and not the other?

8  It wouldn't be unusual in this circumstance for 777

9  and Tactical to simply state that they were joining the

10  Rosebud motion. It might have been more efficient and legally

11  less costly, but all that's up to you.

12  So with that out of the way, let me just -- let me

13  just ask Ms. Gilbert on the motion to stay, so when I get

14  motions to stay discovery, there's a case I like a lot that I

15  commonly follow. It's *New England Carpenters Health and*

16  *Welfare Fund v. Abbott Labs*. It's 2013 Westlaw 690613. It's

17  Judge Rowland.

18  And basically that case talks about how motions to

19  dismiss, and that was a motion-to-dismiss case as the basis

20  for the motion to stay, that, you know, there's not an

21  assumption in the rules that discovery should be stayed

22  pending a Rule 12 motion, even a strong one. We don't know if

23  the Rule 12 motion is going to be granted or denied. The fact

24  that it could be granted, the fact that it might even be a

25  strong motion not really normally a basis to grant a stay.

1  Rather, Judge Rowland talks about is it a threshold-type
2  motion?

3          So does it raise perhaps something akin to qualified
4  immunity that would make the issue in the pending underlying
5  motion of a threshold nature that might warrant the cost
6  saving associated with a stay.

7          So I read your motion and I read the 777 and Tactical
8  motions to stay, again identical, but Ms. Gilbert, I guess on
9  reading them, my initial reaction was that a motion to compel
10  arbitration ordinarily -- I'm getting there; I'm sorry for the
11  long run-up.  It's a good question that I had for you, so bear
12  with me -- the motion to compel arbitration struck me as that
13  type of threshold motion because, like qualified immunity, the
14  ability to resort to an arbitration provision is one that is
15  intended to save a party having to go through things like
16  discovery in litigation.  And so I guess to vindicate that
17  interest in the parties' agreement, if there was one, and I
18  make no judgment as to whether there was or wasn't.  Judge
19  Tharp has the motion to compel arbitration under advisement.
20  But it's a similar -- it's a threshold-type motion.

21          But that said, I, as the magistrate judge, have a lot
22  of discretion to manage discovery.  *Jones v. City of Elkhart,*
23  737 F.3d 1107, 2013, Seventh Circuit.  So I do, and the
24  question that I have for you is I was a little puzzled by the
25  fact that here you have this need to compel arbitration, your

1   client. You have this need to, you know, hold off on having

2   to do all this discovery, and yet this case was filed in

3   February of 2022, so you didn't know about the arbitration

4   clause then? I doubt it.

5         And so what happened in the meantime? Well,

6   discovery got started. Nobody told the courts to stop it, to

7   slow it down. There was -- there was a motion to compel on

8   March 3rd that the plaintiffs filed -- plaintiff.

9         They had to undertake expense of filing that motion,

10   right, after they had undertaken the expense of posing

11   discovery requests in writing, deciding that the requests were

12   overdue. Apparently they were.

13         The Court had to have a hearing. The plaintiff had

14   to incur the expense of having counsel attend that hearing and

15   argue it, and we wound up -- actually, let's see, we wound up

16   not having the hearing, as I see from my notes. So there

17   wasn't the expense of a hearing, but there was the expense of

18   certainly gearing up for one, and then finding out that there

19   was an agreement to render the answers on March 27.

20         So, Ms. Gilbert, this is still part of the question.

21         You know, nobody said then, oh, by the way, you're

22   not going to get your discovery answers. We're moving to stay

23   discovery entirely. They thought they were going to get their

24   discovery answers. They didn't.

25         They then filed or they wound up filing now a motion

1  to compel because, you know, well into discovery and well

2  after you had promised them these responses, you decided to

3  file this motion to compel an arbitration and now I don't want

4  to do discovery.

5         And so forgive me, but it kind of -- it kind of

6  smacks a little bit of delay.  It smacks a little bit of

7  gamesmanship, something of a sexist word, but I think you know

8  what I'm saying, and so it's concerning to me.

9         So why should I grant this stay now?  What took you

10  so long?  And how do we address the fact that they've incurred

11  some expenses?  They've had to file two motions now to get

12  this stuff, and you never told them until -- I guess it was

13  you filed this motion on April 7th, more than a year after

14  filing of the case, but you want to stay everything.

15         Tell me.

16         MS. GILBERT:  Thank you, Judge.  I will try to

17  address each of your points, but I think as a preliminary

18  matter, the motion to compel -- motion to compel discovery

19  responses was directed at the other co-defendants and not at

20  Rosebud Lending.

21         Rosebud -- we were retained, Sarah Zielinski and

22  myself at McGuireWoods were retained to represent Rosebud in

23  late February, early March.  We filed our appearances on

24  March 3rd.  It's my understanding from the client that they

25  were largely -- they were unrepresented for that time.

1          THE COURT:  Okay.

2          MS. GILBERT:  I understand that counsel -- that prior

3    counsel withdrew its representation formally.  I think that

4    motion was granted in late November, but it's my understanding

5    from the client that for months before that, that counsel had

6    other -- from my client's perspective, had pretty much

7    disappeared, so they were unrepresented.

8          THE COURT:  So that's helpful.  That's helpful.  It

9    was something I hadn't apprehended from the file, but I'm

10   still concerned because I still pretty much have to hold

11   parties to the same standard and if they weren't properly

12   represented or weren't represented, well, you know, maybe they

13   needed to be.

14         It's still late in the process now to be staying

15   discovery.  So there's no discovery requests pending on

16   Rosebud at all right now?

17         MS. GILBERT:  Well, I can explain.

18         So when we were represented, I immediately reached

19   out to Mr. Goldstein, plaintiff's counsel, let him know that

20   Rosebud was finally represented.  I asked about the status of

21   discovery and settlement.  Mr. Goldstein graciously told me

22   what had transpired with respect to both.

23         Our client also had not received copies of the

24   discovery that I presume was sent to prior counsel.  So I

25   asked for a copy of those written discovery requests, which

1  Mr. Goldstein again graciously gave a copy to me.  At that

2  point, he had also, Mr. Goldstein had also agreed to an

3  extension for our discovery responses to April 3rd.

4          And then in the interim, Mr. Goldstein and I have

5  been discussing settlement between plaintiff and Rosebud

6  specifically.  And, again, Mr. Goldstein agreed to an

7  extension of our discovery, Rosebud's discovery responses,

8  until April 27th.

9          THE COURT:  Okay.  Very helpful.  Without putting too

10  much on the record -- when it comes to settlement, we don't

11  like to do that -- but are settlement discussions serious?

12  Can you tell me yes or no?

13          MS. GILBERT:  I can tell you from Rosebud's

14  perspective, settlement is a very real option and it's

15  something that they want to pursue.

16          I made a counteroffer as recently as earlier this

17  week, I believe.  Mr. Goldstein can correct me if I'm wrong.

18          THE COURT:  Okay.

19          MS. GILBERT:  And we're just waiting to hear back.

20          THE COURT:  Okay.  Don't need too much detail.

21          Mr. Goldstein, you concur that the settlement

22  discussions with Rosebud are at least at a serious level, is

23  that something you're willing to tell me?

24          MR. GOLDSTEIN:  Your Honor, I think they were

25  serious.  I think the parties are pretty far apart.

1      THE COURT:  Well, that's always the case when you get

2  into a settlement discussion, but you've agreed to allow them

3  until April 27th to render these discovery responses, have

4  you?

5      MR. GOLDSTEIN:  Yes, your Honor, which is one day

6  before plaintiff's response in opposition to defendants'

7  motion to compel arbitration is due.

8      THE COURT:  Okay.

9      All right.  I think I've heard enough from Rosebud,

10  and I think I understand the landscape much better as to

11  Rosebud.

12      But Mr. Daugherty, what say you in response to the

13  same long, long question I put to Ms. Gilbert?  What took you

14  so long?  It sounds like you might not have as good a reason

15  as she did because they just entered into the case, didn't

16  really have the requests until very recently.

17      What about you and your client, Mr. Daugherty?  Tell

18  me if you would, please.

19      MR. DAUGHERTY:  Your Honor, we have a similar

20  background up until November of last year, so prior counsel

21  entered and represented the 777 defendants, including 777 and

22  Tactical in that term, and prior counsel received discovery

23  requests from plaintiff and I believe they were served in

24  October, but they were never provided to the client --

25      THE COURT:  Really?

1          MR. DAUGHERTY:  -- and the client was not made aware

2     of that.

3          THE COURT:  That's terrible.

4          MR. DAUGHERTY:  And so after prior counsel had

5     withdrawn, and I will say the same thing that Ms. Gilbert did,

6     which is that Mr. Goldstein provided those responses -- or

7     those requests to me, I don't have the exact date, but my

8     recollection is it was right around Thanksgiving of last year.

9          THE COURT:  Okay.

10          MR. DAUGHERTY:  So we have had them a little longer

11     than Ms. Gilbert and her client have had them.  So that is

12     what I think I can say about where the 777 defendants are.

13          THE COURT:  Okay.  I want to hear from Mr. Goldstein

14     in a minute, but Mr. Daugherty, I'm just sort of kind of

15     thinking aloud, okay, not saying that this might be what

16     happened, but I'm wondering how you and your clients would

17     feel about having this stay motion entered and continued for

18     now, so no ruling on it, but having you agree to provide the

19     discovery answers that have been asked for now at least since

20     March 3rd, the initial motion, have you provide those by

21     April 27 the way Rosebud is doing.

22          Is what is good for the Rosebud goose okay with the

23     777 and Tactical gander?

24          MR. DAUGHERTY:  Yes, your Honor.

25          I have more I could say about the discovery, but I'll

1   answer your question directly and just say yes, we would be
2   willing to agree to the 27th.

3        THE COURT:  Okay.  So hold on a second because I
4   don't want you to feel like you were not heard.  Just my
5   background is sometimes when I was a lawyer, I had judges who
6   didn't want me to make my record, and I vowed to never be that
7   way.

8        So you'll get to tell me more.  But I'll tell you,
9   Mr. Goldstein and Mr. Edelman, I'm really kind of leaning -- I
10  haven't heard from you yet -- I'm really kind of leaning
11  toward entering and continuing this stay motion through at
12  least April 27 or a few days after, give the parties a chance
13  to file a joint status report on was this discovery provided,
14  and that would also give the plaintiff a chance, who we
15  haven't heard at all on the stay motion yet, to tell me if you
16  feel any differently about it then than you might now, or
17  maybe you'll tell me you're okay with a stay motion today,
18  although I kind of doubt it.

19       But tell me, what would you think if they get
20  ordered -- everybody gets ordered to respond on the 27th what
21  they agreed to do, we enter and continue pending a status
22  report that you would file like the following week, but
23  there's no ruling today on the stay motion.  How would you
24  feel about that?  And what else do you want to tell me at all
25  about the stay motion?

1    MR. GOLDSTEIN:  Thank you, your Honor.

2    I think that would be agreeable to plaintiff, and

3    we'd like -- this case, as your Honor recognized, was filed in

4    February of 2022.  The discovery we issued to Rosebud Lending

5    and to 777 Partners and Tactical was served on October 5th and

6    October 10th.  We've been waiting a long time for this.

7    THE COURT:  Yeah, it's 30 days, so what happened?

8    Did somebody say I can't give it to you in 30 days, will you

9    agree to give me another month or two months?  Did that

10   happen?

11   MR. GOLDSTEIN:  No --

12   THE COURT:  Or did you not hear from them at all?

13   MR. GOLDSTEIN:  We didn't hear from prior counsel at

14   all, having served them, and as Ms. Gilbert said when she came

15   in, she requested an extra 30 days so they could get

16   acquainted.

17   As for the 777 Partners, they just never responded to

18   plaintiff's discovery requests.

19   THE COURT:  Because they were apparently never even

20   provided with the requests.

21   I don't want to dump on prior counsel, but my

22   reaction to that is the same.  I kind of have to hold those

23   parties responsible for what prior counsel did.

24   I can't imagine Mr. Daugherty or Ms. Gilbert, you

25   know, not providing discovery requests to clients and not

1  responding at all within the 30 days and, you know, playing

2  this game of not calling you back.  I can't imagine that they

3  would ever do that.

4         But it does appear that that's what their clients

5  did, at least to their agents, until pretty recently it sounds

6  like, right?

7         MR. GOLDSTEIN:  Yes, your Honor.  We don't know.

8  We've had great difficulty with 777 Partners and Tactical for

9  many months.  They responded to our second written discovery

10  requests, but, again, not at all to the first ones.

11        As your Honor knows, the district court and your

12  Honor has imposed various deadlines in this case.  We've

13  done -- we've obtained substantial discovery, and we've

14  learned that the underlying lending operation here is run by

15  non-tribal persons out of Miami, Florida, that the lion's

16  share of the profits from this enterprise flows to these Miami

17  defendants in the ballpark of around $400 million and that the

18  tribe receives a nominal sum.

19        And Rosebud Lending indicates that they plan to file

20  some type of dispositive motion as to sovereign immunity

21  should their motion to compel arbitration be denied.  Well,

22  any motion like that would raise factual issues for which we

23  need discovery.

24        So I guess I say that all to say, your Honor, that we

25  certainly would like responses to -- we'd like responses from

1  defendants before having to respond in opposition to the
2  motion to compel arbitration.
3          THE COURT:  Okay.  Well, the schedule of responding
4  on the motion to compel arbitration, that is something you
5  would have to address with Judge Tharp, but it sounds -- tell
6  me if I'm wrong -- sounds like plaintiff's position is going
7  to be even if we get the responses to this round of written
8  discovery, why would we agree then to a stay at this point, or
9  tell me if I'm wrong about that?
10          MR. GOLDSTEIN:  That's exactly right, your Honor.
11          THE COURT:  Okay.  You're pretty severely opposed to
12  any stay at this point in the litigation, right?
13          MR. GOLDSTEIN:  Absolutely, Judge.
14          THE COURT:  And not to put words in your mouth,
15  although that's what I'm doing, part of it is because you just
16  didn't get responses for such a long time, including this
17  timeframe before current counsel stepped in.
18          MR. GOLDSTEIN:  Yes, Judge.
19          THE COURT:  Okay.
20          MR. GOLDSTEIN:  And if I may, your Honor, the first
21  time arbitration was raised to me was in March of this year.
22  It was never, as far as I know, raised in any filing to the
23  Court, so really a bomb has been dropped in this case, where I
24  have nine third-party subpoenas that I've issued, four are
25  outstanding.  There's a lot of discovery underway.

1          THE COURT:  Okay.  Well, you know, some bombs drop

2  and they explode, some are duds, and it will be up to Judge

3  Tharp to figure that one out.

4          Mr. Goldstein or Mr. Edelman, was there anything else

5  you wanted to address today?  Because I don't want to cut you

6  off, but then I want to hear more from defense counsel.

7          MR. EDELMAN:  One of the things -- one of the grounds

8  on which we intend to oppose the Rosebud motion to compel

9  arbitration -- sorry.

10         One of the grounds on which we want to oppose the

11  Rosebud motion to compel arbitration is that the entire

12  agreement, including the arbitration provision, is a sham

13  designed to avoid application of Illinois law to a dispute,

14  which is essentially between a local resident and these two

15  companies in Miami, and that the interposition of tribal

16  persons is simply an immaterial device designed to permit this

17  kind of delaying argument to be made.  We have the same

18  arguments with respect to 777 and Tactical.

19         In addition, those two entities are not entitled to

20  invoke any arbitration clause even if it were otherwise

21  enforceable.  It does not expressly state that these two can

22  enforce it, and under recent Illinois and Seventh Circuit law,

23  you need to be an express intended third-party beneficiary of

24  an arbitration clause in order to raise it.  They're not.

25          THE COURT:  Sounds like you're going to have a --

1  well, let me get the right word -- an interesting briefing and

2  argument there on that motion in front of Judge Tharp, but,

3  again, none of that is really before me today.

4         It's still a threshold motion.  That's the hard part

5  for me.  That's what makes this a closer call for me.  It

6  really is a threshold motion.  I understand it's vigorously

7  opposed.

8         But did you have anything else, Mr. Edelman or

9  Mr. Goldstein, on the motion to stay, which is the one before

10  me today?

11         MR. GOLDSTEIN:  Nothing -- nothing else from

12  plaintiff.  Thank you.

13         THE COURT:  Okay.  Let me turn to Ms. Gilbert for a

14  minute because I know you wanted to say something, and I kind

15  of cut you off and didn't mean to.

16         I will often interrupt, and I apologize in advance

17  for that, and I just tell people, hey, I was trained to be

18  ready for judges to interrupt.  And that's not quite the same

19  thing as so rudely interrupting a person, it's just what

20  courts do.  I didn't interrupt you before intentionally, but

21  what did you want to add?

22         MS. GILBERT:  I have three points, your Honor.

23         One main consideration when a court is determining

24  whether to grant a motion to compel arbitration is whether the

25  motion is timely, and a key factor in whether the motion is

1  timely is how substantially or how substantively the parties

2  have engaged in discovery.

3           If your Honor goes forward with ordering the parties

4  to respond to written discovery by April 27th, I suppose I

5  would ask that the order reflect that doing so does not in any

6  way impede or impair Rosebud's ability to move to compel

7  arbitration.  What I'm worried about is risking waiver here --

8           THE COURT:  Yeah.

9           MS. GILBERT:  -- by engaging in substantive

10  discovery.

11           THE COURT:  I don't see it as a waiver.  I think -- I

12  don't see it as a waiver.  I think your statement just now

13  makes that clear.

14           I suppose there's risk that the district court could

15  look at it and say you went farther down the slippery slope

16  and, from an equitable perspective, might cause him to be more

17  concerned about granting your motion to compel arbitration,

18  but I suspect he'll just decide that motion on its merits, you

19  know, was there an agreement or not; does it need to be

20  enforced or not.  All that is up to him.  So don't worry about

21  that, but I appreciate your making a record on that.

22           Anything else, Ms. Gilbert?  And then I'll hear from

23  Mr. Daugherty.

24           MS. GILBERT:  Yes.  Two other points.

25           One, I just want to note that any dispositive motion

1  on the sovereign immunity piece has not yet been filed.  We

2  are first pursuing the motion to compel arbitration, so

3  counsel's representation that there's a need for discovery on

4  the sovereign immunity piece I don't believe is ripe for

5  decision right now.

6  Currently, we're just litigating the motion to compel

7  arbitration.  I will also note that settlement is still very

8  much on the table, and we look forward to engaging in that

9  with Mr. Goldstein.

10  My last point, your Honor, would be that Rosebud has

11  been responsive, and I have been in frequent communication

12  with Mr. Goldstein and plaintiff's counsel, and we certainly

13  intend to continue to do so.

14  THE COURT:  Okay.  Let me give you a couple

15  reactions.

16  Even if you haven't filed a sovereign immunity

17  motion, I think it's fair to say that plaintiffs are on notice

18  that that is a potential defense in the case.  And what does

19  Rule 26(b)(1) tell us about discovery:  The scope is anything

20  that's relevant to a claim or a defense in the case.

21  So if they want discovery related to sovereign

22  immunity, I don't think 26(b)(1) tells them that they can't

23  have it.  I don't see it as disproportional.

24  I think the question really goes to the stay motion,

25  should they have anything at all at this point.

1          And then what was the second point you made?

2          MS. GILBERT:  I just wanted to make a record that

3     Rosebud has been responsive since we've been retained --

4          THE COURT:  Okay.

5          MS. GILBERT:  -- to represent Rosebud.

6          THE COURT:  Okay.

7          MS. GILBERT:  And we certainly intend to continue to

8     be responsive to counsel and their requests.

9          THE COURT:  Okay.  And I know the other thing I

10    wanted to say.

11         You mentioned settlement as a possibility here, and,

12    of course, the truth is that it's always a possibility in

13    cases.  And many judges, and I kind of adopted this approach,

14    where if the settlement talks result in a mediation, if they

15    result in something that does appear to really warrant slowing

16    the rest of the train down, then the Court can entertain the

17    idea of maybe suspending a discovery schedule while that

18    happens.

19         But my inclination is always you have to be in one

20    port or the other.  You can't really be in both.  You can't

21    really slow down a discovery portal with the idea that, well,

22    maybe we're going to settle; well, maybe we might do it, you

23    know, because if we did that, we would have, you know, a lot

24    of 2013 and 2014 cases not resolved.  So we like to avoid

25    that.

1    So I hear what you're saying, and you should
2    understand that, let's see, this is -- this referral includes
3    settlement, which means if at any time the parties all
4    agree -- we always have to be consensual on settlement -- if
5    you all agree that you want to do a settlement conference with
6    me, just reach out to Ms. Knight.  You have her number on the
7    website.  Let her know, and then we will set up a date for
8    everybody to come in telephonically so you don't have to
9    physically come in the courthouse.

10    We're doing physical hearings now on motions because
11    counsel has asked us to and because we can set up three or
12    four of them at the same time, and other counsel can kind of
13    hear how I think about things and maybe how I'm feeling that
14    day, or whatever it is, and it can be very helpful toward
15    resolving things.  I found it very helpful.  So that's why
16    you're here today.

17    But in a first settlement conference, it would just
18    be over the phone, and the parties don't -- shouldn't be
19    there, it's just counsel, and we really just confirm that you
20    really do want to do a mediation and we pick a date.  You get
21    a schedule.  You know, we try to get you in within 30 to
22    60 days.

23    So if you reach that point, you will want to let us
24    know that, let my staff know, and what very typically happens
25    is once we do that phone call and everybody confirms for me

1  that, yeah, I'm serious about wanting to do the mediation, we

2  usually -- as discovery supervisor, I will suspend those

3  requirements.  I will not want you spending money on discovery

4  if you're really serious about settling.

5  But we're not at that point yet.  So that gets me to

6  you, Mr. Daugherty.  I want to be sure you're heard.  There

7  was more you wanted to say.  And to help you a little bit,

8  I'll tell you even my thinking tends to evolve a little bit as

9  I go through here, and I'm also now thinking that per Rule 1,

10  Rule 1 says we have to promote the speedy and inexpensive

11  resolution of matters, and I really don't know about entering

12  and continuing this motion at this point.  I might be ready to

13  decide it.  I might be ready to decide it against you.

14  But go ahead, tell me anything else you want to tell

15  me because I haven't made up my mind yet.

16  MR. DAUGHERTY:  Thank you, your Honor.

17  Are you -- I have comments I would like to make on

18  the plaintiff's motion to compel discovery.  I don't think I

19  have anything further that I would like to present to the

20  Court on the stay motion.

21  THE COURT:  Okay.

22  MR. DAUGHERTY:  May I address the plaintiff's motion

23  or --

24  THE COURT:  That's helpful.  Hold on for a minute

25  because I think it may make sense to have the movant go first

1  on their motion to compel.

2  So let me -- well, first a prefatory question,

3  Mr. Daugherty.  You know, the other thing that happened to me

4  in my career as a prior lawyer was I would go around to

5  various jurisdictions, other counties in Illinois, other

6  states or districts around the country, and there was this

7  thing that would sometimes happen.  It was called being

8  home-towned, okay, and I will just tell you I hated that.  So

9  that was another thing I vowed I would never do.

10  So don't feel like you're being home-towned here, but

11  I need to ask you are you admitted, either pro hac or are you

12  admitted to our bar in any way?

13  MR. DAUGHERTY:  No, your Honor.  I -- I am not a

14  member of the Illinois bar, and I believe I entered my

15  appearance pro hac vice in this matter --

16  THE COURT:  Okay.

17  MR. DAUGHERTY:  -- again, around Thanksgiving.

18  THE COURT:  Okay.  So you were granted leave to

19  appear pro hac.

20  MR. DAUGHERTY:  I believe so, your Honor.

21  THE COURT:  Okay.  Then that's fine.  If for some

22  reason you haven't quite finished that process yet, if

23  there's -- not that I care about the fee, but if there's a fee

24  to be paid, if there's some further form to be filed to make

25  it happen, just make sure you do that, and if you have, don't

1   even worry about it.

2   So what else -- let me tell you what we're going to

3   do on the motion to stay. I think I've heard enough to know

4   that I'm going to deny this motion in my discretion under

5   Rule 1, under the *Jones* case. I really feel like the amount

6   of time that has been allowed to pass here through really I

7   think not the fault, at least entirely, of counsel who have

8   appeared today, but through the parties' actions in not

9   responding to discovery earlier and allowing this amount of

10  time to go by I think is enough for me at this point to say,

11  no, we're going to, in this instance even though it's a

12  threshold motion, we're going to go ahead and let this

13  continue.

14  I also have faith that Judge Tharp, who's a terrific

15  district judge, former marine officer, very, very chop-chop

16  kind of judge, I have faith that he'll move expeditiously on

17  your motion or at least hear it in due course, and due course

18  for him is not a super long time.

19  If anybody needs to -- if they think they need to

20  renew a motion to stay or bring another one, there's no

21  prejudice as to that, but the motion to stay at least today is

22  denied with prejudice, and that applies to all of the

23  defendants who filed a motion to stay.

24  So that's your ruling on the motion to stay.

25  Let me turn to Mr. Goldstein or Mr. Edelman. What

1  are we doing on this motion to enforce?  Why should I grant

2  this?  What specifically are you looking to enforce?

3       MR. GOLDSTEIN:  Thank you, your Honor.

4       This motion, plaintiff's motion to enforce and for

5  sanctions is just as to Defendants 777 Partners and Tactical

6  Marketing Partners.

7       THE COURT:  Okay.

8       MR. GOLDSTEIN:  So we issued discovery to them on

9  October 5th and October 10th, 2022, and we didn't get any --

10  we've not received any response whatsoever, so on March 3rd of

11  this year, your Honor, I filed a motion to compel discovery

12  responses from those defendants.  Your Honor advised the

13  parties that if we reached an agreement as to date of service

14  of those responses, relayed the same to the Court, that the

15  motion hearing would be stricken.

16       Subsequently, 777 and Tactical agreed to provide full

17  and complete discovery responses to plaintiff's counsel by

18  March 27th of this year, and they did not, and they have

19  failed to do so.

20       THE COURT:  Let me cut you off.  I've expressed an

21  interest and I really didn't get big objection from anybody

22  here to having these discovery responses served on April 27th.

23  If that were to occur, would that be the relief that you've

24  effectively sought in your motion?

25       MR. GOLDSTEIN:  No, your Honor, because we also

1  ask --

2          THE COURT:  For sanctions.

3          MR. GOLDSTEIN:  -- for an award of attorneys' fees,

4  and we also asked your Honor to find that any -- any

5  objections to those requests, we ask your Honor to hold that

6  any objections to those requests have been waived because we

7  believe they have indeed been.

8          THE COURT:  Yeah, that's a good argument on a waiver

9  because you can't get held to the requests -- you can't wait

10  forever to respond and then expect to be able to litigate all

11  of that.

12          But I'll tell you how I feel about that.  Rule 1, it

13  includes promoting the just resolution of disputes, and to me

14  having to give up any objection at all to a broad set of

15  discovery requests because you -- you weren't diligent, you

16  didn't have counsel in place who was diligent, whatever it is,

17  but now you do and now we're going to get responses, I

18  don't -- it's not consistent with my, you know, view of

19  substantial justice to hold that there's a waiver.  So I'm

20  kind of disinclined to do that.

21          And then as to sanctions, you know, I'll tell you how

22  I feel about that.  I'm inclined to deny that without

23  prejudice.  So, you know, that might be something that we hear

24  about again, particularly if, for example, April 27th rolls

25  around and somehow you don't get your responses.  You know,

1  maybe there will be a ground for sanctions then.

2  There may be a ground for sanctions now.  As you

3  know, the rule says that the resistance has to be

4  substantially justified.  That's the language in the rule.

5  I think that's a little cloudy here because we have

6  parties that were not engaged in this litigation, and part of

7  that was the fault of earlier counsel apparently, not even

8  getting them the discovery responses.  So to punish them for

9  that, I'm having a problem doing that.

10  So I think you're getting a lot today.  The stay

11  motion is getting denied.  You're going to get your discovery

12  responses.  I think the plaintiff got a lot of relief today,

13  and I'm just not inclined to grant you sanctions, fees, or a

14  waiver, but react to that if you want to make any more record,

15  Mr. Goldstein.

16  MR. GOLDSTEIN:  That's fine.  Thank you, Judge.

17  THE COURT:  Okay.  That's in accord with another

18  great rule of practice:  When you've basically won, you really

19  don't have to say anything else.  It's a rule I like.

20  Mr. Daugherty, let me let you be heard on all this

21  because it's not final.  I haven't heard from you yet,

22  although you indicated you could produce on April 27, but tell

23  me, what else did you want to tell me about this?

24  MR. DAUGHERTY:  Thank you, your Honor.  And, yes,

25  I'll just start with April 27th would be an acceptable date

1 for the 777 defendants, and the one point I just want to make

2 to the Court and also to opposing counsel, the 777 defendants

3 have not and are not refusing to participate in the discovery

4 process.

5       I would just like to point out to the Court that

6 within the last 90 days, the 777 defendants have responded to

7 plaintiff's second set of discovery requests.  We've produced

8 contracts between the two co-defendants in that response.  We

9 provided timely objections to the third set of discovery

10 requests, and are willing -- we have not received a request to

11 meet and confer from plaintiff's counsel on those objections,

12 but we will do so with that.

13       We have provided the initial disclosures from the 777

14 defendants, which were overdue and had not been completed by

15 prior counsel.

16       We have worked with opposing counsel and co-defendant

17 counsel to agree to a confidentiality order in this

18 proceeding, and I bring those all up simply to point out to

19 the Court we have been engaged.  We have been -- we have

20 prioritized responding to the more recent discovery requests

21 in a timely fashion, and I acknowledge and understand that our

22 responses to the first set of discovery requests are overdue,

23 and I would greatly appreciate the Court permitting us until

24 April 27th to make those responses.

25       I will say when we shared our production of documents

1    on March 27th with the opposing counsel, the statement I made

2    to opposing counsel in that email was we continue to work with

3    our clients to respond to the 16 interrogatories, 18 document

4    requests and 9 requests for admission previously served on

5    Tactical and the 16 interrogatories, 15 document requests and

6    7 requests for admission previously served on 777, and we will

7    provide responses to those requests as soon as we are able.

8              That was the last communication I shared with

9    plaintiff's counsel about this first set of requests prior to

10   the motion being filed, and that remains true today.  We are

11   working on those overdue discovery requests that were

12   initially served on prior counsel, and we do intend to provide

13   responses as soon as we are able.

14             THE COURT:  Okay.  I really appreciate your candor,

15   and what you told me reinforces a little bit, makes me feel

16   more comfortable or further comfortable with denying the

17   sanctions request without prejudice and a finding that there's

18   not -- that there shouldn't be a waiver here.

19             Ms. Gilbert, did you have anything you wanted to add?

20             MS. GILBERT:  No, your Honor.

21             THE COURT:  Okay.

22             MS. GILBERT:  Well --

23             THE COURT:  The motion is not directed at you anyway.

24             MS. GILBERT:  It's not directed at me.

25             One point on the motion to stay, I would go back to

1    my concern about engaging in the discovery process.  It's not

2    just the written requests that plaintiffs have issued that we

3    will now be responding to by April 27th.  It's also these

4    third-party subpoenas that have been served.

5            THE COURT:  I'm sorry, third-party --

6            MS. GILBERT:  Third-party subpoenas that have been

7    served.

8            THE COURT:  Okay.

9            MS. GILBERT:  Six third-party subpoenas have been

10   served to various banks.  They are very broad.  They are

11   requesting all documents for all accounts related to our

12   client.

13           We have been doing our best to engage with counsel

14   for those parties as well.  But, again, our ability, as we see

15   the rule or as we see the case law, our ability to engage in

16   meeting and conferring on those subpoenas, filing a motion to

17   quash those subpoenas, which I do believe there are good

18   grounds to do so, is limited by our ability to engage in the

19   litigation process while our motion to compel arbitration is

20   pending --

21           THE COURT:  Yeah.

22           MS. GILBERT:  -- given the timeliness factor.

23           THE COURT:  That is another reason in favor of

24   granting the stay motion, but I decided not to do that because

25   I think the time for that kind of motion kind of came and

1  went, and I recognize you were not on board yet as counsel,

2  but my judgment on that one is that that's now a cost that

3  you're going to have to bear, and I would really encourage

4  everybody to engage meaningfully in the Local Rule 37.2

5  process.

6  Mr. Daugherty, Local Rule 37.2 is our local

7  equivalent to the meet-and-confer requirement in the federal

8  rules except it is different.  It's more stringent.  It

9  requires discovery motions to contain a certification that

10  there was a telephonic or in-person discussion, who was there,

11  when was it, where was it; that certification has to be in

12  there, or through no fault of the movant, the discussion

13  couldn't happen.  A lot of counsel, including veterans in this

14  district, don't understand that, and they think that an email

15  exchange is sufficient.  It might be under the federal rule,

16  but not under the local rule.

17  So I trust that if you have meaningful 37.2

18  discussions and if those subpoenas are overbroad, if they're

19  ridiculous, that maybe you can come to some agreement on that

20  and save yourselves the time of everybody, the time of motion

21  practice.

22  Plaintiff's counsel, you'll be reasonable in those

23  discussions, won't you?

24  MR. GOLDSTEIN:  Absolutely, Judge.

25  THE COURT:  Leading question, maybe a little unfair,

1    but you represent your clients.  But I really think that

2    motions that are so obviously going to be granted don't really

3    belong here because reasonable counsel should come to

4    agreement.

5            So I know that's not a satisfactory answer to you --

6            MS. GILBERT:  Your Honor --

7            THE COURT:  -- Ms. Gilbert, but that's where we are.

8            MS. GILBERT:  Sure.  I suppose I'm going -- I'm not

9    going back.  I'm more than happy to meet and confer and will

10   certainly abide by the local rules on that front.

11           What I was stating is that our ability to engage in

12   those meet-and-confers or to file a motion to quash is

13   hindered by the fact that if we engage in the litigation

14   process, that will -- that will be a knock against us in the

15   factors considered on the motion to compel arbitration --

16           THE COURT:  Maybe.

17           MS. GILBERT:  -- so I'm concerned that if we continue

18   to engage in the discovery process, as we will since the stay

19   has not been granted, that we will somehow be prejudiced on

20   our motion to compel arbitration.

21           THE COURT:  Trust the process.  Trust Judge Tharp to

22   get to the right result, and if you have a winning result, if

23   it's the right result, you'll get it.  That's all I'll say

24   about that.

25           I will -- I will in my order, it will be a very brief

1  order, but I will make some reference to that, that I think --

2         MS. GILBERT:  Thank you, Judge.

3         THE COURT:  -- everybody came here in good faith, and

4  I think it's a little unusual, our ruling today, it's a

5  product of what's gone on before, but that it is without

6  waiver of your position on the motion to compel arbitration.

7  I think Judge Tharp will understand that.

8         MS. GILBERT:  Thank you, Judge.

9         THE COURT:  Trust the process.

10        Anything else, Ms. Gilbert?

11        MS. GILBERT:  Nothing from me.  Thank you, Judge, for

12  your time today.

13        THE COURT:  Okay.  Terrific.

14        Then I think we're done, but we'll just go around the

15  room.

16        Mr. Goldstein, Mr. Edelman, anything else for

17  plaintiff?

18        MR. EDELMAN:  No, your Honor.

19        THE COURT:  Thank you.

20        Mr. Daugherty, anything else from 777 and Tactical?

21        MR. DAUGHERTY:  No, your Honor.  Thank you.

22        THE COURT:  Ms. Gilbert, anything else from Rosebud?

23        MS. GILBERT:  Nothing from Rosebud.  Thank you.

24        THE COURT:  Okay.  Rosebud.  That can be the last

25  word of today's hearing.  Rosebud.

1    We're adjourned.  Thank you.

2    MR. EDELMAN:  Thank you, Judge.

3    (Which were all the proceedings heard.)

4    CERTIFICATE

5    I certify that the foregoing is a correct transcript from

6    the digital recording of proceedings in the above-entitled

7    matter to the best of my ability, given the limitations of

8    using a digital-recording system.

9
     */s/Kathleen M. Fennell*                    *April 20, 2023*
10   _____        _____
     Kathleen M. Fennell                    Date
11   Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25